WILLIAM J. YOUNG *et al.* Appellants, *against* EDWARD
WEEKS, Respondent.

(Decided April 2d, 1877.)

In an action in the Supreme Court, the defendant had been arrested, and subsequently the order of arrest had been vacated on the ground that the complaint united two causes of action, on one only of which the facts authorized the defendant's arrest. The plaintiffs discontinued the suit in the Supreme Court, and sued in this court, alleging, substantially, the same facts, but framing them so as to make a single cause of action, and procured an order of arrest against the defendant. *Held*, that this second order of arrest was vexatious and should be vacated.

The defendant was arrested on affidavits showing that by fraudulent representations as to his affairs the defendant had induced the plaintiffs under an agreement theretofore made, by which the plaintiffs agreed to fill the orders of the defendant "to such parties as they may regard safe and responsible, and in such amounts as they shall deem proper,"—to sell and deliver to the defendant, and to his customers, at his request, goods to a certain amount, a part of which had not been paid for. *Held*, that there being nothing to show what portion of these goods had been sold to the defendant, and what portion to his customers, the order of arrest could not be maintained, and that the fact that the defendant had admitted that all the goods were sold to him upon his own credit, could not change this result, since the plaintiffs must recover, if at all, on the facts alleged by them as their cause of action.

APPEAL by the plaintiffs from an order of this court made at special term by Judge VAN HOESEN, vacating an order of arrest.

The affidavits upon which the order of arrest was obtained charged that the defendant had obtained goods upon credit from the plaintiff by a fraudulent statement of his affairs. Annexed to the affidavits was a copy of the agreement under which the goods had been delivered, the material parts of which were as follows:—

"Whereas the said defendant proposes to engage in the purchase and sale of butter and other produce, at No. 179 Reade street, in the city of New York; and whereas, said plaintiffs propose to fill the orders of said defendant for such butter

and produce to customers from time to time; now, it is understood and agreed, that the said plaintiffs are to fill the orders of said defendant to such parties as they may regard safe and responsible, and in such amounts as they shall deem proper.

" And it is expressly agreed that the books and accounts of said defendant, pertaining to said business, are to be at all times open to the inspection of said plaintiffs, and are to be fully posted up at least once in each week, so as to show the true state and condition of said business; and the accounts pertaining to said business are to be subject to the direction and under the control of said plaintiffs.

"It is further agreed that said defendant shall faithfully and promptly account for and pay over to the said plaintiffs all the proceeds of the sales by him made of such butter and produce, after first deducting therefrom, for his service, care, and attention, in and about said business, the profits made by him upon such sales.

" And it is further and finally expressly agreed and understood, that the said defendant shall not, without the consent of said plaintiffs, engage in the purchase and sale of commodities not furnished by them; and that he will well and faithfully keep the said plaintiffs informed and advised of all and every his acts in the premises."

The affidavit alleged that, relying upon the defendant's statements and representations, the plaintiffs had sold and delivered to the defendant and to his customers, at his request, goods on which there remained a balance of $2,007 88.

On the motion to vacate the order of arrest it appeared that an action had previously been commenced in the Supreme Court to recover this same sum of $2,007 88, and that in that action $971 30 of this sum had been charged in the complaint as money paid for the defendant's benefit, and at his request, and the balance for goods sold and delivered to him, and that in the action in the Supreme Court an order of arrest had been granted on the same grounds as the one here, and subsequently vacated. On the motion to vacate the order of arrest in this court, there was introduced an affidavit by one of the plaintiffs' attorneys (who had also been the attorneys for

the plaintiffs in the suit in the Supreme Court), stating that the order of arrest there had been vacated solely on the ground that the complaint in that action included a cause of action in addition to that on which his arrest was sought, and that the justice who vacated the order stated on doing so that in his opinion. the defendant could be rearrested.

Judge Van Hoesen, on vacating the order of arrest here, wrote the following opinion :—

" The order of arrest ought to be vacated. The plaintiffs' papers show that an agreement was made between the parties to this action by which the plaintiffs were to fill the orders for butter and produce of such customers as the defendant might, from time to time, introduce, provided the plaintiffs regarded such customers as safe and responsible for such amounts as they (the plaintiffs) deemed proper to deliver. The books and accounts of the defendant were, by the terms of the agreement, to be subject to the direction and under the control of the plaintiffs.

The affidavits on which the order of arrest was obtained allege that the defendant, on the 10th of January, 1876, rendered to the plaintiffs an account in writing which falsely stated his book accounts to be larger in amount than they actually were. Then follows the allegation that, relying on said statements, etc., the plaintiffs sold and delivered to the defendant, *and to his customers*, at his request, goods to the amount of $12,238 51, of which amount there remains due to the plaintiffs the sum of $2,007 88.

From these allegations it is impossible to determine how much of the plaintiffs' loss resulted from the failure of those customers whom they " regarded as safe and responsible," and how much from the defendant's neglect or refusal to pay his bills. It may be that the defendant himself has paid for all the goods which came into his hands, and that he is to-day a prisoner merely because the plaintiffs were mistaken as to the solvency of the customers whom they considerad safe and responsible. There is no necessary connection between the defendant's alleged false representations and the loss which the plaintiffs complain of. But, to warrant an arrest,

the damage should result from the fraud.    From the purport
of the agreement annexed to Wm. I. Young's affidavit, as
well as from the affidavit itself, I have great doubts whether
the plaintiffs permitted any goods whatever to pass into the
hands of the defendant.    Although the affidavit is not consist-
ent in all its parts, I think it not unfair to construe it to
mean that the goods were all delivered to customers intro-
duced by the defendant, but that the plaintiffs think that, as
matter of law, they are at liberty to maintain that the goods
were sold to the defendant himself.

If the defendant falsely represented the customers he in-
troduced to be solvent, an action for deceit might lie against
him.    If he obtained goods from the plaintiffs by means of
false representations as to his own resources, he might be
arrested in an action for goods sold and delivered.    But no
matter how false his representations respecting his assets were,
he is not liable to arrest in an action for goods sold and de-
livered, where it appears, as it does in this case, that he was
a mere toiler, and that the plaintiffs selected their vendees
from among the customers he introduced, and then, acting
solely on their own judgment, delivered to them no more
goods than "they deemed proper."    The plaintiffs evidently
depended on the responsibility of those to whom the goods
were delivered, and not upon the defendant, or upon his
opinion as to the solvency of customers.    In face of the agree-
ment, and of Young's affidavit, I think it wrong to assume,
as I must do, in order to uphold this arrest, that the defend-
ant was the actual buyer of the goods, and that he ordered
them to be delivered on his individual responsibility to cus-
tomers of the plaintiffs' selection.    Of course, this arrest can
not be supported on the ground that the defendant has col-
lected and wrongfully withheld moneys belonging to the
plaintiffs.

I have examined the affidavit on which a justice of the
Supreme Court granted an order of arrest against this defend-
ant, in a suit brought against him by the plaintiffs, for the
same cause of action.    Apart from the objection which caused
the discharge of that order, I think that affidavit fatally

defective.  For the second time the defendant has been arrested on insufficient grounds.  The fact appears to be that the plaintiffs have no reason recognized as·valid by the laws of this State for the arrest of the defendant.  The affidavit in this case was drawn with care, and the attorney who prepared it exhausted his ingenuity in making his statement specious, but nevertheless he has failed, doubtless from want of material, to bring his case within sec. 179.  I think the second arrest vexatious.  The order of arrest must be vacated, with $10 costs to the defendant."

*William H. Arnoux*, for appellants.

*W. H. & D. M. Van Cott*, for respondent.

JOSEPH F. DALY, J.—The judge at special term was justified in vacating the order of arrest.  It was a second arrest of defendant for the same cause of action as the first arrest, upon papers presenting substantially the same defect as the papers in the first suit in the Supreme Court.  Plaintiffs were bound to show that the second arrest was not vexatious, and if they fail to do so the court will infer it. (*Archer* v. *Champneys*, 3 Moore, 307, cited in *People* v. *Tweed*, 5 Hun, 382.)  It may be that an honest mistake of a plaintiff in selecting his forum or his remedy in the first instance will not prejudice his right to a second order of arrest ; the case of *People* v. *Tweed*, above cited, furnishes an illustration of how far the courts will go in so holding ; but the circumstances of each particular case must determine to what extent the mistakes of the plaintiff may be allowed to bear on defendant to the extent of needlessly harassing him, and how many experiments may be unsuccessfully resorted to to seize a debtor's body before the court will protect him.  Here the plaintiffs sued in the Supreme Court, and united in their action two causes of action, upon one only of which they could arrest defendant.  The order of arrest was vacated.  Plaintiffs sue now in this court and frame a statement of a cause of action covering the same demand, substantially,

which they made in the Supreme Court, but ingeniously worded to assume the shape of a single claim. The judge at special term concluded this arrest to be vexatious, and I can hardly disagree with him.

But a graver difficulty is pointed out by him in his opinion rendered on the motion to vacate the order. It does not appear beyond a reasonable doubt on plaintiffs' papers—in fact it is by no means clear—what plaintiffs' demand is upon which they claim to arrest defendant. They sue upon a special agreement, under seal, by which plaintiffs were to sell goods, taking orders from third parties to whom plaintiffs, if satisfied of their responsibility, were to furnish goods, defendant to collect and account for proceeds of sales. They set up that they sold and delivered goods " to defendant and to his customers " to the amount of $12,238 51; that they sold and delivered " to defendant" goods to the amount thus stated, to wit, $12,238 51, on which a balance is now due of $2,007 88. But for the fact that plaintiffs set up as part of their cause of action and of arrest the agreement before mentioned, and averred that the goods to the amount mentioned were furnished " to defendant and his customers," it might be said that the mere allegation of the making of the agreement was surplusage and did not affect the only cause of action set up in the papers, a sale to defendant. But the agreement has some significance taken in connection with the sworn statement that the goods were furnished to defendant and his customers; a claim based upon that agreement is evidently contemplated though not developed in the affidavit, enough being stated to show, however, that part of plaintiffs' demand is for other goods than those sold to defendant. Under these circumstances the order of arrest was properly vacated, the ground of arrest being fraud in contracting the debt for goods sold to defendant on his sole responsibility.

Plaintiffs' claim, however, that an affidavit of defendant (read on the motion to discharge the arrest in the action in the Supreme Court, and introduced on this motion with the whole record of the Supreme Court proceeding) shows that

all the goods claimed for were sold to defendant on his credit.

But this averment by defendant of an agreement or state of affairs differing from that set up by plaintiffs, and on which plaintiffs claim judgment, will not help them. If they cannot recover upon the agreement they set up they cannot recover in this action upon a different agreement set up by defendant as a defense. The averment in defendant's affidavit is inconsistent with any claim made by plaintiffs in the Supreme Court or in this court upon the agreement of November 9, 1874, upon which they rely.

The order should be affirmed.

CHARLES P. DALY, Ch. J.—I concur upon the ground that the arrest in this court was vexatious, the defendant having been arrested for the same cause in the action in the Supreme Court, and after a hearing discharged.

LARREMORE, J., concurred.

Order affirmed.